NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MISAEL SALAZAR,

               Plaintiff,

  v.

MAQUET CARDIOVASCULAR, BOSTON SCIENTIFIC, JOHN DOE (1-12), and XYZ CORPORATION (1-12),

               Defendants.

Civ. Action No. 10-1166 (KSH)

**OPINION & ORDER**

**Katharine S. Hayden, U.S.D.J.**

      Plaintiff Misael Salazar has initiated this action against his former employers, defendants Maquet Cardiovascular and Boston Scientific, 12 unnamed individual defendants, and 12 unnamed corporate defendants (collectively, "defendants"), alleging violation of the New Jersey Conscientious Employees Protection Act ("CEPA"), N.J.S.A. 34:19-1 *et seq.* [D.E. 1.] In addition, plaintiff makes the claim that defendants' conduct leading up to and including his termination violated his rights under the New Jersey Constitution and the U.S. Constitution.[1]

---

[1] The complaint does not specify what provisions of the N.J. and U.S. Constitutions allegedly were violated, only stating that defendants' actions amount to "violations of Article Plaintiff, paragraphs 1 and 18 of the New Jersey Constitution; the United States Constitution, as plaintiff was retaliated against because he exercised his rights to grieve and complain." (Compl., ¶ 33.) Defendants suggest, and the Court agrees, that plaintiff intended to refer to "Article I" of the N.J. Constitution, and not to "Article Plaintiff."

I. ALLEGATIONS IN THE COMPLAINT

The "preliminary statement" of the complaint states:

> This complaint arises out of the deliberate infliction of physical and emotional distress upon Plaintiff, by Defendants in response to Plaintiff's refusal to participate or engage in or conceal fraud, or participate in an illegal activity.

Plaintiff alleges that he was hired by Boston Scientific Corporation as a Knitting Technician in 1998. (Compl. ¶ 7.) The complaint documents plaintiff's salary increase percentages for each year from 1999 to 2008. Plaintiff alleges a correlation between various events at his job (e.g., supervisors threatening him and issuing warning letters) and the salary percentage increased thereafter. For example, plaintiff alleges that in 2001 he received a 4.2% increase in salary, but after he was "threatened to be fired by his supervisor . . . if he refused to run previously rejected material used in artificial grafts," he received only a 4% increase in 2002. (*Id.* ¶¶ 10-12.) Moreover, the complaint claims that after plaintiff "sent a memo [to management] explaining quality issues with plain medical fabrics" in 2003, he was repeatedly "threatened to be fired by his supervisor." (*Id.* ¶¶ 14-15.) In 2004, plaintiff alleges that a Boston Scientific supervisor reviewed his performance, and subsequently told plaintiff that he would receive only a 1% increase because of the "memo Plaintiff sent to management" in 2003. (*Id.* ¶ 15.)

The culminating events appear to have been set into motion in 2007, when plaintiff "discovered that an investigation was initiated by the corporation and although violations/quality concerns were found, little was done because the [sic] Boston Scientific was being sold to Defendant Maquet Cardiovascular." (*Id.* ¶ 21.) Plaintiff alleges that he was issued a warning letter in 2007, and that he "received no salary increase in 2008." (*Id.* ¶¶ 22-23.) Once Maquet

acquired Boston Scientific, according to the complaint, plaintiff was taken to the Human Resources office on more than one occasion and "warned not to talk to anyone" about problems with a new device, and he was issued at least one warning letter thereafter. (*Id.* ¶¶ 24-28.) On August 17, 2009, plaintiff allegedly met with the "President of the Division, where he complained about the company's FDA [Food & Drug Administration] violations, falsification of documents by local management and the impending launching of a new and untested device (Fusion)." (*Id.* ¶ 30.) According to the complaint, the "President of the Division . . . assured Plaintiff of a thorough investigation into his concerns. [However, he] failed to take any remedial measures." (*Id.*) Then, on "August 24, 2009, Plaintiff was terminated by Defendant Maquet[.]" (*Id.* ¶ 31.) Plaintiff filed the complaint with this Court on March 4, 2010.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure ("FRCP") 12(b)(1) permits courts to dismiss a complaint for "lack of subject matter jurisdiction." Challenges to subject matter jurisdiction under Rule 12(b)(1) may "facially" attack "the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true." *Turicentro, S.A. v. Am. Airlines Inc.*, 303 F.3d 293, 300, n. 4 (3d Cir. 2002). A "facial" challenge by a defendant contests the adequacy of the pleading as it pertains to subject matter jurisdiction. *Id.* The party asserting jurisdiction bears the burden of demonstrating that jurisdiction is proper. *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993).

Similarly, FRCP 12(b)(6) permits courts to dismiss a complaint for "failure to state a claim upon which relief can be granted." When considering the motion, the district court judge is "required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Morse*

*v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  The standard is "not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims."  *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 312 (3d Cir. 2004) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds).

The pleading standard has been heightened through decisions of the U. S. Supreme Court, beginning with *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and further refined in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  In the latter, the Supreme Court emphasized the distinction between factual contentions and legal conclusions, and cautioned against accepting as sufficient "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Interpreting *Iqbal*, in *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009), the Third Circuit wrote that the task of the district court is to apply a two-prong test:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.

*Fowler*, 578 F.3d at 210-11 (citations omitted).

### III. ADDRESSING THE PENDING MOTION

Defendants now bring a motion to dismiss pursuant to FRCP 12(b)(6).[2]  [D.E. 7.]  The moving brief argues that the complaint should be dismissed because:  (1) it fails to satisfy the pleading standard articulated in *Twombly* and *Iqbal*; and (2) it fails to state a claim for relief

---

[2] The moving brief states that defendant MAQUET Cardiovascular, LLC was erroneously identified as "Maquet Cardiovascular" in the complaint.  The Court will refer to said defendant as MAQUET hereinafter.

4

against MAQUET, *see supra* footnote 2, a private entity, under either the New Jersey Constitution or the U.S. Constitution.  MAQUET further requests that the Court decline to exercise supplemental jurisdiction over the remaining state law claim.

Although not stated explicitly, defendants' motion challenges the existence of subject matter jurisdiction, pursuant to FRCP 12(b)(1).  This Court may properly decide this case if plaintiff alleges facts that would establish either federal question or diversity of citizenship jurisdiction.  "For purposes of federal question jurisdiction, '[a]n action arises under the laws of the United States if and only if the complaint seeks a remedy expressly granted by a federal law or if it requires the construction of a federal statute or a distinctive policy of a federal statute requires the application of federal legal principles for its disposition.'"  *Jayme v. MCI Corp.*, 2008 U.S. Dist. LEXIS 12789 (D.N.J. 2008) (Brown, C.J.) (quoting *Lindy v. Lynn*, 501 F.2d 1367, 1369 (3d Cir. 2008)).  Diversity jurisdiction is properly invoked where the parties are citizens of different states and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).  When a plaintiff cannot establish federal question or diversity jurisdiction, a "federal court concludes that it lacks subject matter jurisdiction, [and] the complaint must be dismissed in its entirety."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 502 (2006).

The complaint does not refer to either of the two bases for subject matter jurisdiction.  The statement of jurisdiction states that plaintiff is a New Jersey resident; that the "acts and conduct complaint of occurred in the State of New Jersey"; and that both MAQUET and Boston Scientific (the two named defendants) are "organized to do business in New Jersey."  (Compl. ¶ ¶¶ 1-4.)  It is by plaintiff's own concession that the Court may easily conclude that there is no diversity of citizenship.  The Court need not consider whether the amount in controversy exceeds $75,000.

The Court turns its attention to the issue of federal question jurisdiction—the other basis for establishing subject matter jurisdiction. Federal question jurisdiction is "typically governed by the 'well-pleaded complaint rule,' which provides that there is jurisdiction only when the 'face of the plaintiff's properly pleaded complaint' presents a federal question." *City of Paterson v. Shannon G., LLC*, 2008 U.S. Dist. LEXIS 36341, at *4 (D.N.J. 2008) (Chesler, J.) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

The "constitutional" count of the complaint states in full:

### COUNT TWO (CONSTITUTIONAL)

> 32. Plaintiff repeats the allegations of the previous counts as if fully restated herein.
>
> 33. Said allegations amount to violations of Article Plaintiff [*see supra*, footnote 1], paragraphs 1 and 18 of the New Jersey Constitution; the United States Constitution, as plaintiff was retaliated against because he exercised his rights to grieve and complain.
>
> 34. Because of Plaintiff exercising his rights to grieve and complain, he was not given the same opportunity or treatment given by Defendant [sic] and its agents to non-grieving and complaining employees.
>
> 35. As a consequence of the aforestated [sic] acts, Plaintiff has been damaged as previously set forth.
>
> **WHEREFORE**, Plaintiff requests judgment against all defendants for monetary damages, both compensatory and punitive, both past and prospective, both several and joint plus costs and interest for violation of Article Plaintiff [sic], paragraphs 1 and 18 of the New Jersey Constitution.

(Compl. ¶¶ 32-35.)

The complaint does not reference a provision of the U.S. Constitution. The same is true for the opposition brief, which addresses only the CEPA claim. Nevertheless, plaintiff argues in the opposition brief that his should remain in federal court, because "[a] cursory reading of [his] claims sets forth the interpretation of possible federal statutes." (Opp'n. Br. 9.) Plaintiff sets

6

forth two reasons for this argument.  First, he states that he "complained about the company's FDA violations, falsification of documents by local management and the impending launching of a new untested device . . . .  The interpretation of FDA statutes and/or guidelines will most certainly come into play."  (*Id.*)  The Court rejects such a tenuous argument.  "[I]n order to support subject matter jurisdiction in this court, the federal question must appear on the face of the complaint."  *J. Kaz, Inc. v. Brown*, 2010 U.S. Dist. LEXIS 49646, at *5-6 (W.D. Pa. 2010). The U.S. Supreme Court recently reminded district courts that federal question jurisdiction exists only where the cause of action "necessarily raise[s] a stated federal issue, actually disputed and substantial."  *Grable & Sons Metal Prods., Inc. v. Darue Eng. & Mfg.*, 545 U.S. 308, 314 (2005). However, the complaint does not so much as mention the FDA, nor any of its "statutes and/or guidelines."

Second, plaintiff states that "subsequent to the filing of this matter, the Department of Justice [DOJ] . . . contacted [plaintiff's attorney's] office . . . [and] acknowledged that [sic] an investigation into Maquet and Boston Scientific specifically related to possible fraud on part [sic] of each of Plaintiff's previous employers.  In fact, they had informed the [p]laintiff of his right to file a *qui tam* case at the conclusion of their investigation."  (Opp'n. Br. 9-10.)  The Court will read the facts in the best possible light for the plaintiff at the motion to dismiss stage, and therefore assume that the DOJ made these comments to plaintiff.  However, plaintiff also states in the opposition brief that the DOJ attorney told plaintiff of his right to file a *qui tam* case at the <u>conclusion</u> of the investigation.  (*Id.*)  Moreover, the complaint does not so much as reference the alleged DOJ investigation, let alone establish that such an investigation had concluded.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

7

defendant is liable for the misconduct alleged.") Accordingly, the Court does not have subject matter jurisdiction because no question of federal law is involved and because plaintiff fails to establish diversity in citizenship. *See* 28 U.S.C. §§ 1331, 1332.

Without the "constitutional" cause of action, the complaint only includes a state law claim based on CEPA. Under 28 U.S.C. § 1367, a district court may exercise supplemental jurisdiction over claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy" under Article III of the U.S. Constitution. "Stated otherwise, a prerequisite to the federal court's exercise of pendent jurisdiction over a plaintiff's state law claims is that at least one claim based on the court's original diversity or federal question jurisdiction is before the court." *Polite v. Rendell*, 2010 U.S. Dist. LEXIS 31867, at *13-14 (E.D. Pa. 2010). Now that this Court has dismissed the one claim over which it potentially could have jurisdiction, it has the express authority, pursuant to § 1367(c), to decline to exercise supplemental jurisdiction over any related state law claims. The CEPA claim is dismissed.

## IV. CONCLUSION

As a consequence of the foregoing, defendants' motion is granted.

Good cause appearing,

It is on this 10th day of June, 2010

**ORDERED** that defendants' motion to dismiss [D.E. 7] is **granted**.

/s/Katharine S. Hayden

Katharine S. Hayden, U.S.D.J.